**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

03 OCT 31  AM 10: 41

JOSETTA A. GREENE,                         )
                                           )
          Plaintiff,                       )
                                           )
v.                                         )     CIVIL ACTION NO. 02-JEO-0007-W
                                           )
JOHN E. POTTER, POSTMASTER                 )
GENERAL, UNITED STATES                     )
POSTAL SERVICE,                            )
                                           )
          Defendant.                       )

U.S. DISTRICT COURT
N.D. OF ALABAMA

**ENTERED**

OCT 3 1 2003

**<u>MEMORANDUM OPINION</u>**

In this action, Josetta A. Greene ("Greene" or "the plaintiff") asserts that the defendant,

John E. Potter, Postmaster General, United States Postal Service ("U.S.P.S." or "the defendant"),

terminated her employment as a result of race and sex discrimination in violation of 42 U.S.C. §

2000e, *et seq.*, and 42 U.S.C. §§ 1981 & 1981a. (Doc. 1). Presently before the court is the

defendant's motion (1) to dismiss the plaintiff's § 1981 claim, (2) for summary judgment on all

her Title VII claims, and (3) to strike her claim for punitive damages. (Doc. 12).

The defendant asserts that the plaintiff's § 1981 claims are due to be dismissed because

they are precluded on sovereign immunity grounds and the Title VII claims are due to be

dismissed because the plaintiff has failed to cite a jurisdictional basis for her claims. (Doc. 12).

Additionally, the defendant asserts that the plaintiff has not presented a *prima facie* case of

discrimination. (*Id.*). Lastly, the defendant asserts that the plaintiff's claim for punitive damages

is due to be dismissed because they are not available under Title VII against a Federal entity.

(*Id.*).

19

## FACTUAL SUMMARY

The plaintiff was hired by the defendant in Tuscaloosa, Alabama, as a Part-Time Flexible ("PTF") Letter Carrier on July 15, 2000. (Greene Dep. at 11-12).[1] As a condition of her employment, the plaintiff had to satisfactorily complete a ninety (90) day probationary period. (Greene Dep., Ex. 5 at 110).[2] The contract between the National Association of Letter Carriers and the U.S.P.S. specifically states that "[t]he Employer shall have the right to separate from its employ any probationary employee at any time during the probationary period and these probationary employees shall not be permitted access to the grievance procedure in relation thereto." (*Id.* at 110). All employees are evaluated during their first 90 days, with evaluations given at 30, 60, and 80 days of employment. (Greene Dep. at 38-39).

The employee performance evaluation consists of six specific factors which are discussed with the employee, rated by the manager, and then initialed by the employee. (Greene Dep. at 39; Greene Dep. Ex. 5 at 101). Robert Sprung, the Station Manager, was the plaintiff's manager. He explained the various factors to the plaintiff on July 24, 2000, and August 8, 2000. (Greene Dep. at 45).

The plaintiff's first 30-day performance evaluation was conducted on or about August 13, 2000. (Green Dep. at 39-40, 53). She was rated unsatisfactory in work quantity. (Greene Dep., Ex. 5 at 10). On August 25, 2000, three weeks before her 60-day evaluation, Sprung met with the plaintiff to discuss her work performance deficiencies. (Greene Dep. at 41). He specifically discussed the fact that she had made misdeliveries to similar addresses. (*Id.*). Sprung also told

---

[1] The plaintiff's deposition excerpts are located at exhibit A to document 14.

[2] The various attachments to the plaintiff's deposition are located at exhibit B to document 14. The page numbers are located in the lower right-hand corner.

her that safety was never to be compromised for productivity. (Greene Dep. at 41; Greene Dep., Ex. 5 at 92). The plaintiff, however, does not remember Sprung telling her that safety was never to be compromised. (Greene Dep. at 41; Greene Dep., Ex. 5 at 10). Following this evaluation, the plaintiff was provided additional training around August 25, 2000, in the form of riding with another carrier to observe and receiving instructions on proper delivery methods. (Greene Dep., Ex. 5 at 88, 93). She also discussed her situation with Sprung again on August 28, 2000. They discussed her misdelivery of mail and that she "needed to watch numbers carefully because there are several duplicate house numbers" on her route. (*Id*. at 88).

On September 9, 2000, the plaintiff was involved in an accident at a location where she had misdelivered mail. (Greene Dep., Ex. 5 at 86). She was in the process of correcting the misdelivery when she put one foot down and her other foot went under the truck. (Greene Dep. at 48-49). As a result, she sprained her ankle. The accident report indicates that the plaintiff admitted that she was not wearing the proper shoes at the time of the incident. (Green Dep., Ex. 5 at 86). However, the plaintiff states that someone in postal carrier school at the Carrier Academy stated that since they were probationary employees, they were not required to wear the standard shoes. (Greene Dep. at 49).

The plaintiff's second evaluation occurred on September 14, 2000, which is also the date of her termination. (Greene Dep. at 40). At that meeting, Sprung discussed with her that there were three elements out of the six that he rated her as being unsatisfactory. (*Id*. at 54). He also discussed with her the reasons for those negative ratings. (*Id*. at 54). According to Sprung, the plaintiff was terminated because of repeated misdeliveries and her "at-fault accident on route." (Green Dep., Ex. 5 at 101). Sprung also stated that other issues came into play including the fact

3

that she was forgetful in her handling of her mail key and due to mail being brought back.[3] (Sprung Dep. at 185-86).[4]  Sprung stated that in the Alabama district, at-fault accidents, especially in that time period, were a critical evaluation item because they oftentimes involved the loss of workdays where the defendant would have to pay the employee compensation even though they were not working.  (Sprung Dep. at 165).

The plaintiff filed an EEO complaint alleging that she was a victim of race, sex, and disability discrimination that resulted in her termination.  The claims were investigated and the Agency issued a report on February 5, 2001.  (Greene Dep., Ex. 5 at 83-86).  The plaintiff requested review by an Administrative Law Judge.  (Greene Dep. at 54).  The Judge found that the plaintiff had not been discriminated against when she was terminated.  (Doc. 14, p. 6 at ¶ 31). The defendant issued a "Final Agency Decision" on October 3, 2001, concurring with the decision of the Administrative Law Judge.  (*Id.* at ¶ 32).  The plaintiff subsequently filed the present suit.

## SUMMARY JUDGMENT STANDARD

Summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The party seeking summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine

---

[3] There is no further explanation of these deficiencies in the record excerpts submitted to the court.

[4] Excerpts from Sprung's deposition are located at document 18, exhibit 1.

4

issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *see* FED. R. CIV. P. 56(a) and (b). Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. The nonmoving party need not present evidence in a form necessary for admission at trial; however, the movant may not merely rest on the pleadings. *Id.*

After a motion has been responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the

5

nonmoving party." *Anderson*, 477 U.S. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 259. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

The court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury and, therefore, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988). "If reasonable minds could differ on the inferences arising from the undisputed facts, then a court should deny summary judgment." *Allen v. Tyson Foods*, 121 F.3d 642 (11th Cir. 1997).

## DISCUSSION

### Plaintiff's § 1981 Claims

The plaintiff has conceded in her "Opposition to Defendant's Motion for Summary

6

Judgment" that her § 1981 claims are due to be dismissed. Accordingly, this portion of the motion is due to be granted. Because the only basis for proceeding on her federal claims is pursuant to Title VII (*see Brown v. General Services Administration*, 425 U.S. 820, 825, 96 S. Ct. 1961, 1963, 48 L. Ed. 2d 402 (1976)), the court will next address her claims thereunder (42 U.S.C. § 2000e-16(c)).

### Plaintiff's Title VII Claims

The plaintiff has conceded in her "Opposition" that her request for punitive damages is due to be struck because the "government, [a] government agency or political subdivision" may not be sued for punitive damages. Accordingly, this part of the defendant's motion is due to be granted.

The court must now address the merits of the plaintiff's disparate treatment claims for purposes of the summary judgment motion. Because the plaintiff does not present any direct evidence of discrimination, the court must apply the familiar *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), standard. The plaintiff must demonstrate "intentional discrimination." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The Supreme Court has stated unequivocally that "[p]roof of discriminatory motive is critical" in a disparate treatment case. *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335-36 n.15, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977). *See also United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983); *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989); *Clark v. Huntsville City Bd. of Educ.*, 717 F.2d 525, 528-29 (11th Cir. 1983).

The plaintiff carries the initial burden of establishing a *prima facie* case of discrimination.

*McDonnell Douglas Corp.*, 411 U.S. 792.  She can establish a *prima facie* case under Title VII by showing: (1) that she was a member of a protected class (black/female); (2) that she was qualified for the position at issue; (3) that an adverse employment action was taken against her; and (4) that the employer treated similarly situated employees outside the protected class more favorably.  *Spivey v. Beverly Enterprises, Inc.*, 196 F.3d 1309 (11th Cir. 1999); *see, e.g., Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999); *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1310 (11th Cir.), *superseded in part*, 151 F.3d 1321 (11th Cir. 1998); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984).

   If the plaintiff succeeds in establishing a *prima facie* case, the defendant only has the burden of articulating or producing evidence, but not persuading, that the plaintiff was disciplined or terminated for a "legitimate, nondiscriminatory reason."  *Burdine*, 450 U.S. at 253; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).  *See also Chambers v. Walt Disney World, Co.*, 132 F. Supp. 2d 1356 (M.D. Fla. 2001) ("If a plaintiff establishes a prima facie case of discrimination, the defendant employer must articulate a legitimate, nondiscriminatory reason for the challenged employment action."), quoting *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc)).  Once the defendant articulates a "legitimate, nondiscriminatory reason" for its actions, any presumption of discrimination arising out of the *prima facie* case "drops from the case."  *Burdine*, 450 U.S. at 255 n.10; *Hicks*, 509 U.S. at 507.  The court "must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered "legitimate

8

reasons were not what actually motivated its conduct." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11ᵗʰ Cir.), *cert. denied*, 522 U.S. 1045, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1997) (citing *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11ᵗʰ Cir. 1994)). This must include an evaluation of "whether the plaintiff has demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence.'" *Combs*, 106 F.3d at 1538. If it is "determine[d] that a reasonable jury could conclude that the employer's articulated reasons were not the real reason for its decision, the court may not preempt the jury's role of determining whether to draw an inference of intentional discrimination from the plaintiff's prima facie case taken together with rejection of the employer's explanations for its action." (*Id.*).

The defendant concedes that the first two elements are satisfied, but argues that the plaintiff cannot make out a *prima facie* case of race or sex discrimination because none of the comparison employees she has identified were similarly situated probationary employees at the relevant time. Rather, they were non-probationary PTF employees. As non-probationary employees, the defendant asserts that they were not similarly situated to the plaintiff, who was functioning as a probationary employee. (Doc. 14 at 14). According to the defendant, the comparators alleged by the plaintiff were career employees who had already been working at the Postal Service for a number of years, and none were been removed for reasons even remotely similar to the reasons that the plaintiff was removed. (*Id.* at 15). The defendant also argues that during the plaintiff's employment, Sprung did not supervise any other probationary employees except for the plaintiff. (*Id.*).

9

This court must first determine what it means in this case to be "similarly situated." The court in *Maniccia* stated:

> "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir.), opinion modified by 151 F.3d 1321 (1998) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)). "The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed." *Id*. (internal quotations and citations omitted). We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges. *See Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989) ("Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.").

*Maniccia*, 171 F.3d at 1368-69.

Thus, in a case such as the present one that involves an employee termination, the issue is whether the other employees are "similarly situated" for comparative purposes. This will be the situation only if their conduct is "nearly identical" in relevant respects to that of the plaintiff. The burden is on the plaintiff to show that similarly situated employees were not treated equally. *See Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989). In making this determination, "the court must consider whether the employees involved in or accused of the same or similar conduct were disciplined in different ways." *Gaston v. Home Depot USA, Inc.*, 129 F. Supp. 2d 1355, 1369 (S.D. Fla.), *aff'd*, 265 F.3d 1066 (11th Cir. 2001) (Table). "'The most important factors in the disciplinary context . . . are the nature of the offenses committed and the nature of the punishments imposed.' *Silvera v. Orange County School Bd.*, 244 F.3d 1253, 1259 (11th Cir.)

10

(quoting *Holifield*, 115 F.3d at 1562), *cert. denied*, ___ U.S. ___, 122 S. Ct. 402, 151 L. Ed. 2d 305 (2001).  We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.  *See Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989) ('Exact correlation is neither likely nor necessary, but the cases must be fair congeners.  In other words, apples should be compared to apples.')."  *Maniccia*, 171 F.3d at 1368-69.

In this case, the question of whether the plaintiff is similarly situated with non-protected persons is crucial.  *Coutu v. Martin Cty. Bd. of Cty. Commissioners*, 47 F.3d 1068, 1073 (11th Cir. 1995).  The plaintiff must show that she was removed while non-protected employees having comparable or worse conduct were not.  In order to compare the plaintiff's treatment with that of employees of another race or gender, she must show that she is similarly situated to those employees in terms of supervision, performance, qualifications and conduct, "without such differentiating or mitigating circumstances that would distinguish" their situations.  *Holifield*, 115 F.3d at 1562-63.

The plaintiff contends that she was treated differently than six other employees who had either misdeliveries or an on-the-job injury but were not terminated.  According to the EEO Investigative Report, the plaintiff identified the following employees as being similarly situated.  They are as follows: "Tony Morrison,"[5] a white male; Nicole Kimbrough, a black female; Ethan Morris, a black male; Mark High, a white male; Richard Jones, a white male; and, Chris Strickland, a white male.  She also identified two additional employees, Benny C. Connor, a black male, and Darryl Foster, a black male, in her deposition as comparators.  (Greene Dep. at

---

[5] The plaintiff stated that Tony Morrison might also be Chris Morrison.  (Greene Dep. at 27).

11

29-32).

Two of the employees, Kimbrough and Morris, were PTFs for over a year before they were assigned to the Tuscaloosa Post Office and were not under Sprung's supervision during their probationary period. (Greene Dep., Ex. 5 at 85, 94). Similarly, High and Jones were transferred to the Tuscaloosa Post Office, but were not on probation in Tuscaloosa under Sprung's supervision. (*Id.*). Accordingly, absent a greater showing from the plaintiff, Kimbrough, Morris, High, and Jones cannot be used as comparators because they were not similarly situated with the plaintiff in terms of purported improper conduct and supervision under Sprung during their 90-day probationary period.

The plaintiff testified at her deposition that Chris Morrison, a white male, was rehired by the Postal Service after hitting a parked car while he was making collections. (Greene Dep. at 27-28). The plaintiff stated that she was not sure of Morrison's first name. She did not know whether he was supervised by Sprung. (*Id.*). The plaintiff acquired information about Morrison from another carrier at the Eastside station, who she does not remember by name. (*Id.* at 28). The defendant could not find any record of a "Tony Morrison." (Greene Dep., Ex. 5 at 85). Sprung testified that he had never heard of a "Toni Morrison" or a "Tony Morris."[6] (Sprung Dep. at 44). The plaintiff's evidence on this comparator is insufficient as a matter of law. The plaintiff has no personal knowledge concerning Morrison and none of the evidence before the court is in a form likely to be admissible at trial. The evidence fails to show that he was on probation at the time of the accident. Under the circumstances, the court cannot find that Morrison is an appropriate comparator.

---

[6] He was not asked about a Chris Morrison.

12

The plaintiff next lists Benny C. Connor as a comparator.  However, she does not know if that is his correct name.  (Greene Dep. at 29-30).  She did testify that he was not supervised by Sprung, that he had a grievance with the Post Office and they rehired him, and that her brother knows him personally.  (Greene Dep. at 29-30).  This is simply insufficient to make him an comparator.

The plaintiff also lists Darryl Foster as a comparator.  However, he also was not supervised by Sprung.  (Greene Dep. at 30-31).  The plaintiff testified that Foster was terminated during his probationary period and filed a successful EEO claim resulting in his return to work.  (Greene Dep. at 31-32).  The plaintiff did not know the nature of his purported violation.  (*Id.* at 31).  This information is insufficient for the court to conclude that Foster is an appropriate comparator.

The plaintiff's last purported comparator is Chris Strickland.[7]  He suffered an on-the-job injury due to heat exhaustion approximately sixteen to eighteen months after he completed his probationary period.  He was not terminated.  (Sprung Dep. at 193-94).  Strickland did not have any injuries during his probationary period.  (Sprung Dep. at 193).[8]  Even assuming that Strickland had an unspecified number of misdeliveries while on probation, the record shows that he did not have an "accident" sufficiently similar to the plaintiff to make him an appropriate comparator.  His "accident" occurred after he was a regular employee.

Regarding the last element of the *prima facie* case, the defendant asserts that the plaintiff has not demonstrated that she was qualified for the position.  The court agrees.  Although there

---

[7] The plaintiff's counsel also identifies this comparator as "Chris Simmons." (Doc. 16 at 4).

[8] Sprung testified that Strickland may have had misdeliveries while on probation. (Sprung Dep. at 195-97).  He did not have any accidents. (*Id.*).

13

may be a dispute as to the number of misdeliveries performed by the plaintiff, the record is clear that she had misdeliveries during her probationary period. Additionally, the record demonstrates that with the passage of time and additional training and assistance, she was still experiencing misdeliveries. Her accident was incurred while she was attempting to rectify a misdelivery. Additionally, she was rated as unsatisfactory in three of the six categories at the time of her last review. Under the circumstances, the court finds that the plaintiff has not satisfied this element of the *prima facie* case.

The defendant next argues that even if the court finds that the plaintiff has demonstrated a *prima facie* case, its articulated reasons constitute legitimate, nondiscriminatory reasons for terminating the plaintiff. Its reasons for terminating the plaintiff were her misdeliveries and her accident, which occurred while she was correcting a misdelivery. (Doc. 14 at 15). The plaintiff retorts that she has shown that the defendant's reasons are simply pretexual. (Doc. 16 at 4).

Sprung testified that misdeliveries were not uncommon. In fact, he speculated that Strickland may have had some during his probationary period. He also stated that what the defendant watched for was how the problems and mistakes were corrected as the new employee went along. (Sprung Dep. at 196). In the plaintiff's case, she continued to have delivery problems until the end when she sprained her ankle.[9] This, combined with the defendant's high priority on making sure that employees work safely, constitutes legitimate reason for terminating the plaintiff. Sprung testified, and the plaintiff did not dispute, that she received additional help and training to improve her performance. (*See* Greene Dep. at 88, 93). The fact that the plaintiff

---

[9] The plaintiff notes that she did not have misdeliveries on August 14, 21, and 22 when others were present for "ride-along" observations; however, it is undisputed that she had other misdeliveries, including on the last day when she sprained her ankle.

did not overcome her misdelivery problems and her resulting injury justify the defendant's termination decision. The accident was a critical item that cannot be overlooked under the circumstances. (*See* Sprung Dep. 186).

To the extent the plaintiff argues that she did not have ten misdeliveries, only four or five that she recalled, this is insufficient to show pretext in this case. (Greene Dep. at 59-60). To the extent the plaintiff also argues that Sprung testified that Strickland had misdeliveries during his probationary period, was injured, and was not terminated, the court does not find this significant under the circumstances. First, Sprung's testimony regarding misdeliveries by Strickland was speculation. (Sprung Dep. 193-96 ("He probably did [have misdeliveries]")). Second, Strickland was not injured while correcting a misdelivery during his probationary period. His injury occurred numerous months after he was no longer on probation.

The plaintiff has failed to demonstrate that Strung's decision to exercise his option to terminate the plaintiff's employment because of her overall unsatisfactory performance, premised on the misdeliveries and her "at-fault, on-the-job injury" was pretextual.[10]

To the extent that the plaintiff argues that there is circumstantial evidence that her termination was motivated by discrimination based upon her race because a supervisor walked by her and a couple of other African-American employees and stated that he did not like them to "huddle together." (Doc. 16 at 2, citing Greene Dep. at 20). The court does not find this sufficient to show pretext. Nothing in the testimony specifically implicates Sprung in this conduct. Even if he made such statements, it does not provide an adequate basis to infer pretext.

---

[10] To the extent that the parties disagree whether the plaintiff was taking Tylenol 3 for her ankle injury on her last day, the court does not find the dispute material for purposes of resolving the defendant's motion for summary judgment.

**CONCLUSION**

Premised on the foregoing, the court finds that the defendant's motion for summary judgment is due to be granted.  An appropriate order will be entered.

**DONE**, this the _31st_ day of October, 2003.

<br>

**JOHN E. OTT**
United States Magistrate Judge